UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:22-cr-00014-2 |
|  | ) |  |
| COREY MONTE PICKETT, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

### MEMORANDUM OPINION

Before the Court is Defendant Corey Pickett's Amended[1] Motion to Dismiss Counts Two and Three of the Second Superseding Indictment, (Doc. No. 288), charging him with illegally possessing ammunition in violation of 18 U.S.C. §§ 922(g)(1) and (9). Pickett argues that §§ 922(g)(1) and (9) violate the Second Amendment as applied to him, and, in the alternative, that either Count Two or Three should be dismissed as multiplicitous. (Id. at 2–9). The Government filed a response in opposition (Doc. No. 299), and Pickett replied (Doc. No. 301). Having considered the parties' arguments and the evidence introduced during the October 1, 2024 hearing, the Court will grant in part and deny in part Pickett's Motion.

I. BACKGROUND

In the middle of the day on March 18, 2021, Pickett was involved in a shooting at the Camel Carwash in Nashville, Tennessee. Pickett was subsequently indicted on two counts stemming from his possession of ammunition during the shooting. Count Two of the operative Second Superseding Indictment ("Indictment") charged him with possession of ammunition by

---

[1] Pickett's amended motion "is intended to supplement" and "supersede" his initial motion to dismiss. (See Doc. No. 288 at 1).

someone previously convicted of a crime punishable by imprisonment for a term exceeding one year (*i.e.* a felony), in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 227 at 2). Count Three charged him with possession of ammunition by someone previously convicted of misdemeanor domestic violence, in violation of 18 U.S.C. § 922(g)(9). (Id.). Pickett stipulated that prior to March 18, 2021, he had been convicted of a felony offense and a misdemeanor crime of domestic violence. (See Doc. No. 246 at 36; Gov. Tr. Ex. 70). At trial, a jury found beyond a reasonable doubt that Pickett illegally possessed ammunition and was guilty of Counts Two and Three. (Doc. No. 285). Pickett's sentencing is scheduled for February 12, 2025. (Doc. No. 300).

Pickett now moves to dismiss the Indictment and vacate his convictions, arguing that §§ 922(g)(1) and (9) are unconstitutional as applied to him because he does not present a danger to the public while armed. (Doc. Nos. 288 at 2–9; 301 at 1–4). Pickett further argues in the alternative that even if the Court rejects his as-applied challenge, it should still dismiss either Count Two or Three as multiplicitous because they involve the same ammunition during the same event. (Doc. Nos. 288 at 9–10; 301 at 4–7). The Government opposes both requests because (1) Pickett's criminal history demonstrates that he is a dangerous person who may be disarmed consistent with the Second Amendment; and (2) the proper way for the Court to address the multiplicity issue is not to dismiss one of the counts, but rather to "merge the two counts of conviction for sentencing purposes and impose one sentence." (See Doc. No. 299). On October 1, 2024, the Court held an evidentiary hearing on Pickett's Motion.

As relevant here, Pickett's prior criminal history is set forth in detail in the U.S. Probation & Pretrial Services' September 27, 2024 memorandum ("Criminal History Memo"), a copy of which was filed on the docket in this case.[2] (See Doc. No. 295). The Criminal History Memo

---

[2] Neither Pickett nor the Government objects to the Criminal History Memo or its accuracy.

shows that Pickett (who was 31 years old at the time of the instant offense) was convicted of four separate felony drug trafficking crimes when he was between the ages of 19 and 24 years old. (Id. ¶¶ 18–19, 23, 26). In 2009, at age 19, Pickett was convicted of possession or casual exchange of 33.4 grams of marijuana. (Doc. No. 295 ¶ 18). In 2010, at age 20, he was again convicted of possession with intent to distribute 20.1 grams of marijuana. (Id. ¶ 19). In 2011, at age 21, Pickett switched his drug of choice and was convicted of possession with intent to distribute 13.1 grams of crack cocaine. (Id. ¶ 23). Then in 2014, Pickett received his fourth conviction for possession with intent to distribute drugs, this time for 15.8 grams of cocaine. (Id. ¶ 26). Pickett received varying sentences for these convictions, but it appears he remained in custody from at least July 17, 2014 to May 27, 2020. (Id. ¶¶ 23, 26). In addition to these drug trafficking convictions, Pickett's adult convictions include possessing a semi-automatic firearm with a tampered serial number, domestic assault with bodily injury, and resisting arrest, among other things. (Id. ¶¶ 9, 24, 27). Pickett also incurred several disciplinary infractions while in custody, which included participating in a security threat group act, assault with a weapon, and possession of a deadly weapon. (Id. ¶ 28).

**II.     DISCUSSION**

The Court will first address Pickett's as-applied constitutional challenge to Counts Two and Three before moving to his multiplicity argument.

    A.    <u>As-Applied Challenge to § 922(g)(1) (Count Two)</u>

Pickett first argues that the Court should dismiss Count Two because § 922(g)(1) violates the Second Amendment as applied to him. (Doc. No. 288 at 2–9). It is well settled that all

Americans presumptively have a Second Amendment right "to keep and bear Arms"[3] "regardless of whether they have been convicted of a felony." United States v. Gailes, 118 F.4th 822, 826 (6th Cir. 2024) (citation and internal quotation marks omitted). However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." District of Columbia v. Heller, 554 U.S. 570, 626 (2008). To justify a restriction on an individual's right to possess firearms, the Government must demonstrate "that the regulation 'is consistent with the Nation's historical tradition of firearm regulation.'" United States v. Williams, 113 F.4th 637, 650 (6th Cir. 2024) (quoting N.Y. State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 24 (2022)).

Recently, in Williams, the Sixth Circuit considered whether § 922(g)(1) is vulnerable to a "facial" or "as-applied" constitutional challenge for violating the Second Amendment.[4] The panel concluded that "§ 922(g) is constitutional on its face"—and therefore not susceptible to a facial challenge—because "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous," and § 922(g) "is an attempt to do just that." Id. at 657, 662–63. It also rejected the defendant's as-applied challenge because § 922(g) is constitutional "as applied to dangerous people," and the defendant's "criminal record shows that he's dangerous[.]" Id. at 662–63. But in so holding, Williams left open the possibility that § 922(g) may "be susceptible to an as-applied challenge in certain cases" where "an individual has met his burden to demonstrate that he is not dangerous." Id. at 657.

---

[3] The Second Amendment states in full, "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II.

[4] A facial challenge is a claim that a law is unconstitutional in *all* of its applications and seeks "to take the law of the books completely," whereas an as-applied challenge "argues that a law is unconstitutional as enforced against the plaintiffs before the court." Speet v. Schuette, 726 F.3d 867, 871–72 (6th Cir. 2013); Bucklew v. Precythe, 587 U.S. 119, 138 (2019).

In applying Williams to this case, the Court must decide whether Pickett has met his burden to demonstrate he is *not* "dangerous." Id. at 662. If he fails to meet this burden, then his as-applied challenge necessarily fails under the rule in Williams. To determine "whether an individual has met his burden to demonstrate that he is not dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope," the Sixth Circuit instructs district courts to consider "the unique circumstances of the individual, including details of his specific conviction," and his "entire criminal record—not just the specific felony underlying his section 922(g)(1) prosecution." Id. at 657–58, 663. Although there are no "bright categorical lines" for "whether a defendant's past convictions are dangerous," the Williams panel explained that "certain categories of past convictions are highly probative of dangerousness, while others are less so." Id. at 657–58, 660. These "categories of past convictions" are divided into the following three groups: (1) crimes against the body of another person, such as "murder, rape, assault, and robbery;" (2) crimes that, "while not strictly crimes against the person, may nonetheless pose a significant threat of danger," such as "drug trafficking and burglary;" and (3) crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." Id. at 659. An individual convicted of a crime falling in either of the first two "categories will have a very difficult time, to say the least, of showing he is not dangerous." Id. at 663.

It is undisputed that Pickett was convicted of four separate drug trafficking felonies. (Id. ¶¶ 18–19, 23, 26). These convictions place Pickett squarely in Williams' second category, as the Sixth Circuit specifically identified drug trafficking as a "prime example" of "a serious offense that, in itself, poses a danger to the community." Williams, 113 F.4th at 659 (citing United States v. Stone, 608 F.3d 939, 947 n.6 (6th Cir. 2010)). Drug trafficking crimes "do not always involve an immediate and direct threat of violence against a particular person," but there is still a

presumption that these "crimes put someone's safety at risk, and . . . justify a finding of danger." Id.; see also United States v. Jackson, 110 F.4th 1120, 1122, 1125 (8th Cir. 2024); United States v. Goins, 647 F. Supp. 3d 538, 554 (E.D. Ky. Dec. 21, 2022) (noting that drug trafficking crimes "flag [a defendant] as having an above average chance of committing future crimes[,] . . . marking him as the sort of threat to public safety that Congress can permissibly seek to eliminate by stripping him of his Second Amendment rights"). Thus, Pickett's drug trafficking convictions carry a presumption of dangerous, and § 922(g) is constitutional as applied to him unless he can meet the "difficult" burden of rebutting that presumption. See Williams, 113 F.4th at 663; see also United States v. Jennings, --- F. Supp. 3d ---, 2024 WL 45650602, at *3 (E.D. Mich. Oct. 24, 2024).

Despite his multiple drug trafficking convictions, Pickett argues that he does not "present[] a danger to the public *if armed*" because those offenses are "a decade old" and they involved only "small amounts of marijuana or cocaine." (Doc. No. 288 at 8). Williams did not provide guidance about whether, and to what extent, the Court should weigh factors such as the age of the defendant's conviction, how old the defendant was at the time of the conviction, or the *amount* of illegal substances involved in the defendant's drug trafficking crimes. See United States v. Green, 2024 WL 4469090, at *4 (E.D. Mich. Oct. 10, 2024). Given that the Court must consider the defendant's specific, history and entire criminal record, it may be proper for the Court to consider these factors in assessing Pickett's dangerousness. See United States v. Bell, 2024 WL 4589812, at *5 (E.D. Mich. Oct. 28, 2024). Although Pickett's drug trafficking convictions are several years old, it appears he spent a significant amount of time in prison between the ages of 24 and 30. (See Doc. No. 295 ¶¶ 23, 26). The Court agrees with the Government that this is "a reality that diminishes the force of [Pickett's] claim that his convictions are dated." (Doc. No. 299 at 3). And

6

even where, as here, a defendant's "crimes are old, the *repeated nature* of his drug trafficking offenses indicates dangerousness." See United States v. Bell, 2024 WL 4589812, at *5 (E.D. Mich. Oct. 28, 2024) (collecting cases).

There may be some unique circumstances where the Court could find a limited exception to the Sixth Circuit's rule that drug trafficking, "*in itself*, poses a danger to the community." Stone, 608 F.3d at 947 n.6 (emphases added). But having considered Pickett's arguments here, the Court is not convinced that Pickett's drug trafficking convictions are somehow nondangerous merely because they occurred long ago or involved a relatively small (yet still felonious) amount of drugs. As another post-Williams opinion observed, "[i]t is difficult to discern what exactly might be a non-dangerous drug-trafficking conviction, if drug trafficking is inherently a dangerous crime." Green, 2024 WL 4469090, at *4. "Perhaps the [Sixth Circuit] envisioned a solitary conviction for playing merely some sort of peripheral, bookkeeping role in a drug trafficking conspiracy, because to qualify the crime would need to pose no threat of physical harm to others." Id. Or, as Pickett notes, non-dangerous drug-trafficking crimes may include operating a marijuana dispensary or "dispensing marijuana for medical reasons where a state law allows it." (See Doc. No. 288 at 6). Whatever the case may be, Pickett's four drug trafficking felonies do not fall into this potential exception, and he has not otherwise persuaded the Court that his crimes present "no threat of physical danger" to the community. See Williams, 113 F.4th at 663.

The Court also rejects Pickett's remaining arguments, most of which share a central theme that Williams was wrongly decided or is nonbinding. For example, Pickett contends in his reply brief that "the burden of proving dangerousness should remain with the Government, not the defendant." (Doc. No. 301 at 2). But Pickett's position contradicts Williams' express holding that "in an as-applied challenge to § 922(g)(1), the burden rests on [the defendant] to show he's not

dangerous." Williams, 113 F.4th at 662.  Williams "remains controlling authority"—and the Court must follow it—"unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting *en banc* overrules" Williams.  Darrah v. City of Oak Park, 255 F.3d 301, 309 (6th Cir. 2001); see also United States v. Yoon, 398 F.3d 802, 806 (6th Cir. 2005).

Pickett next submits that "this Court should use the categorical or modified categorical approach" to determine whether the "details of" an individual's prior convictions make him dangerous.[5] (Doc. No. 288 at 4–6).  Pickett does not cite any cases that have applied the categorical or modified categorical approach in a similar context.  The few courts to have considered this argument have either "rejected application of the categorical approach," or "have expressed reluctance to impose the categorical approach" onto Second Amendment jurisprudence.  See United States v. Nunamaker, --- F. Supp. 3d ---, 2024 WL 4436333, at *7 (N.D. Okla. Oct. 7, 2024) (collecting cases).  This makes logical sense because the categorical and modified categorical approaches focus exclusively on the *elements* of a defendant's prior conviction and expressly prevent courts "from considering how an offender may have violated the statute in a particular circumstance," Jacobs v. United States, 2021 WL 5014093, at *3 (6th Cir. Oct. 28, 2021), whereas the Williams test is "fact-specific" and "depend[s] on the unique circumstances of the individual defendant," Williams, 113 F.4th at 660.  Moreover, the Williams panel explained that "we don't mean to suggest that courts facing as-applied challenges must find 'categorical' matches to show a defendant is dangerous." Williams, 113 F.4th at 660.  Accordingly, the Court

---

[5] The Court notes that Pickett made this argument before the Court received the undisputed Criminal History Memo and filed it on the docket.

sees no good reason for applying the seemingly inapposite categorical and modified categorical approaches to determine whether Pickett's unique circumstances show he is dangerous.

Pickett's next attack on Williams is that the Sixth Circuit's "inclusion of 'drug trafficking' as a crime that 'inherently poses a significant threat of danger'" was (1) "dicta," (2) "made without any analysis at all," and (3) "is completely devoid of a rational basis." (Doc. No. 288 at 5–6; see also Doc. No. 301 at 3–4). The Court need not spend much time addressing the second and third parts of Pickett's argument because the Court's role is not to second-guess the Sixth Circuit's reasoning and analysis. As to the first part of his argument, Williams' language regarding the three "categories of past convictions" (regardless of whether this language constitutes dicta) merits considerable respect, and constitutes at least persuasive authority, on the question before the Court. The Court further notes that Sixth Circuit decisions *before* Williams agreed that drug trafficking crimes carry a presumption of dangerousness. See Stone, 608 F.3d at 947 n.6. Thus, the Court is inclined to follow Williams' reasoning regarding the three "categories" of dangerousness even if that language technically is dicta.

Pickett's final argument is that the categories identified in Williams are "unconstitutionally vague," particularly the phrase "inherently poses a significant threat of danger" in the second category. (Doc. No. 288 at 6). The Court is persuaded by, and adopts the reasoning of, the Eastern District of Michigan's decision in United States v. Bell, which recently considered and rejected an identical post-Williams vagueness challenge. 2024 WL 4589812, at *6. Like the court in Bell, this Court is not aware of any authority (and Pickett does not cite any) "for the proposition that a *judicial ruling* pertaining to a statute can make the statute unconstitutionally vague." Id. at *6 (collecting cases and holding that "there is no question that § 922(g)(1) is clear on its face"). But even if judicial rulings theoretically could make a statute unconstitutionally vague, Pickett could

not possibly show that the second category is unconstitutional as applied to him because he was convicted of multiple drug trafficking crimes—crimes that the Sixth Circuit specifically identified as inherently dangerous. See id. at *7. "[T]he fact that the Williams decision leaves somewhat unclear what threshold level of dangerousness is needed for a person to be constitutionally disarmed does not doom its interpretation to vagueness." Id. at *8 (citing Sessions v. Dimaya, 584 U.S. 148, 159 (2018)).

In sum, the Court finds that § 922(g)(1) is constitutional as applied to Pickett because he failed to satisfy his burden to show he is not dangerous.

B. As-Applied Challenge to § 922(g)(9) (Count Three)

Pickett's as-applied challenge does not distinguish between his § 922(g)(1) charge in Count Two and his § 922(g)(9) charge in Count Three. But because Williams only addressed an as-applied challenge to § 922(g)(1), the Court has decided to address Pickett's § 922(g)(9) conviction separately.

Section 922(g)(9) prohibits an individual from possessing a firearm (including ammunition) if he has "been convicted in any court of a misdemeanor crime of domestic violence." Pickett does not dispute that he has a previous misdemeanor domestic-violence conviction, which the Criminal History Memo explains occurred after he picked a female "into the air and slammed her to the ground" and later "pushed her onto the ground and kicked and hit her." (Doc. No. 295 at 16–17). These violent facts, when considered in combination with Pickett's felony drug trafficking convictions and other crimes, leave the Court with no doubt that Pickett is dangerous and may be prohibited from owning or possessing firearms or ammunition pursuant to § 922(g)(9). See United States v. Kaiser, 2024 WL 4300552, at *3–*4 (N.D. Ohio Sept. 26, 2024) (rejecting as-applied challenge to § 922(g)(9)); United States v. Wheler, 2024 WL 1579915, at *7 (S.D. Ohio Apr. 11, 2024) (finding that defendant failed to "identify anything about his circumstances that

would make him any less dangerous [than] any other domestic violence offender prohibited from possessing a firearm").

Accordingly, the Court holds that § 922(g)(9) does not violate the Second Amendment as applied to Pickett.

        C.      <u>Multiplicity Challenge to Counts Two and Three</u>

Pickett argues in the alternative that either Count Two or Count Three "must be dismissed because each involves a single choice to possess the exact same ammunition at the exact same time, at the exact same location, and during the exact same event." (Doc. No. 288 at 9–10). In response, the Government contends that the Court should merge the two counts of conviction and impose one sentence. (Doc. No. 299 at 3–5). Although there is case law to support both parties' arguments, the Court has decided as a discretionary matter to adopt the Government's recommendation.

The Double Jeopardy Clause protects "against multiple punishments for the same offense[.]" See <u>Whalen v. United States</u>, 445 U.S. 684, 688 (1980). A conviction itself constitutes a "punishment" under the Double Jeopardy Clause because a multiplicitous "conviction, even if it results in no greater sentence" carries "potential adverse collateral consequences that may not be ignored." See <u>Ruthledge v. United States</u>, 517 U.S. 292, 302 (1996). Such consequences could include a delay of "defendant's eligibility for parole" or "an increased sentence under a recidivist statute for a future offense," and "the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction." <u>Id.</u> (citations omitted).

To determine whether a punishment (including a conviction) is "unconstitutionally multiple[,] courts look to what punishments the Legislative Branch has authorized." <u>United States v. Grant</u>, 15 F.4th 452, 456 (6th Cir. 2021) (quoting <u>Whalen</u>, 445 U.S. at 688) (internal quotation

marks omitted). In Grant, the Sixth Circuit held that "§ 922(g) does not permit multiple punishments based on the statute's different subdivisions for a single incident of firearm possession." Id. at 457. The Government is free to "pursue multiple theories of violation at trial," but "*only one conviction* may result under § 922(g) for a single incident of possession, even though the defendant may belong to more than one disqualified class." Id. (emphases added). The Court interprets this language to mean that a defendant cannot receive separate convictions under §§ 922(g)(1) and (g)(9) where, as here, he "commits one act of possession yet is both a felon and a domestic-violence misdemeanant." Id. (quoting United States v. Modena, 430 F. App'x 444, 446 (6th Cir. 2011)).

The parties seem to agree that Pickett cannot be convicted and sentenced for two separate § 922(g) violations, but they disagree about whether the proper remedy is for the Court to vacate one of the convictions or "merge" them for sentencing purposes. (See Doc. Nos. 288 at 9–10; 299 at 3–5). Relevant case law does little to resolve this dispute, as there are Sixth Circuit cases finding that dismissal and merger are both appropriate remedies when a defendant is convicted on multiplicitous § 922(g) charges. See Grant, 15 F.4th at 459 (remanding with instructions to merge the two § 922(g) counts of conviction into one); United States v. Salas, 2022 WL 190433, at *3 (6th Cir. Jan. 20, 2022) (remanding with instructions to vacate one of the § 922(g) convictions). Practically speaking, the remedy does not matter much because the result will be the same either way. But given the choice between these remedies, the Court finds it prudent to follow Grant because it is the most recent published Sixth Circuit decision to address § 922(g) specifically.[6]

---

[6] There is a separate line of Sixth Circuit case law addressing whether courts should vacate or merge multiplicitous charges under 18 U.S.C. § 924(c). Although some cases have been in "conflict over the proper remedy for multiple convictions under § 924(c)," it appears that the majority approach is to merge the convictions. See United States v. McNeil, 106 F. App'x 294, 305–06 (6th Cir. 2004).

Accordingly, the Court has elected to merge Pickett's convictions on Counts Two and Three into a single count of conviction. As a result, Pickett's future criminal judgment will reflect that he has only one conviction under § 922(g) in this case, he is being sentenced for a single violation of § 922(g), and he will be responsible for paying only one special assessment at sentencing. See United States v. Grant, No. 1:20-cr-00211-JRA (N.D. Ohio Oct. 6, 2021), Doc. No. 33-3 at 1 (post-remand Amended Judgment reflecting that "Count 2 is merged with Count 1 as required by law"); United States v. Cooper, 64 F. App'x 434, 438 (6th Cir. 2003) (vacating $100 special assessment on count that should have been merged at sentencing). It is the Court's intention that merging Counts Two and Three this way will allow Pickett to avoid the potential collateral consequences identified in Ruthledge, 517 U.S. 292 at 302.

## III. CONCLUSION

For the foregoing reasons, Pickett's Amended Motion to Dismiss Counts Two and Three of the Second Superseding Indictment (Doc. No. 288) will be granted in part and denied in part. The Court will not dismiss Counts Two or Three for violating the Second Amendment, but it will merge these two counts into a single count of conviction.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE